**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**


**DENNIS LAMAR ROBERTS,**

      **Plaintiff,**

**vs.**                                                                 **Case No. 4:12cv129-RS/CAS**

**CHRISTOPHER LANDRUM, et al.,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

    Five of the six named Defendants[1] filed a motion to dismiss, doc. 31, Plaintiff's

complaint, doc. 1.  Plaintiff, a pro se prisoner, was directed to respond to the motion to

dismiss, doc. 33, and his response was timely filed.  Doc. 37.  Plaintiff's response, doc.

37, is an identical re-statement of the facts as alleged in the complaint, doc. 1.[2]  The

motion is ready for a ruling.

    In general, Plaintiff's complaint alleged that in October 2010, he was assigned to

work in food services and was required to wash pots.  Doc. 1 at 5.  Plaintiff complained

that the water was too hot and requested rubber gloves.  *Id.*  Defendant Williams told

---

[1] Defendant Williams filed an answer, doc. 32, to the complaint, but did not join in the motion to dismiss filed by Defendants Landrum, Speights, Horton, Richardson, and Curvin.

[2] Plaintiff did not sign his response.  Doc. 37.  Pursuant to N.D. Fla. Loc. R. 5.1(B)(5), all documents submitted to the Clerk's Office for filing must contain Plaintiff's original signature.  In the future, documents which do not comply will be returned to Plaintiff without filing.

Plaintiff there were no gloves, and to clean the pots or "he would go to lock-up for refusing to work." *Id.* Plaintiff alleged that when he was forced to put "his hands in hot water above 250 degrees with chemicals [it] caused Plaintiff to suffer second degree burns . . . ." *Id.*

Plaintiff filed a grievance concerning the incident, and Defendant Speights responded to the grievance advising that the response Plaintiff received on the informal grievance adequately addressed the issues. *Id.* Plaintiff went to sick call because of blisters and pain on his hand, but Plaintiff alleged that Defendant Curvin provided no treatment for his injuries. *Id.* Plaintiff went to sick call on the following day and Defendant Horton scheduled Plaintiff to see the doctor. *Id.* at 5-6. Plaintiff reports that Defendant Horton "only issued [Plaintiff] a medical pass from October 21, 2010, to October 28, 2010." *Id.* at 6.

Plaintiff alleged that Defendant Williams paged Plaintiff "to report to work, and forced Plaintiff . . . to work" even though Plaintiff's hand was wrapped up due to his injury. *Id.* at 6. Another officer saw Plaintiff's hand and directed Plaintiff to go back to his dorm. *Id.* On October 27th, Defendant Horton issued Plaintiff another medical pass from October 27, 2010, through November 2, 2010, "for restricted activity, no use of right hand." *Id.* Plaintiff said that he repeatedly asked Defendant Williams for rubber safety gloves, but each time Plaintiff was told that Defendant Williams had no gloves to give him. *Id.* Plaintiff contends that he has suffered permanent injury to his right hand and claims it is a "direct result of" Defendant Williams' "neglect in failing to provide and follow safety procedures . . . ." *Id.* Plaintiff brings Eighth Amendment claims against all named Defendants. *Id.* at 7.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), *quoting* Twombly, 550 U.S. at 570, 127 S.Ct. 1955.[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949, *citing* Twombly, 550 at 556; *see also* Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 556. A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 557.

---

[3] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), quoted in Twombly, 127 S.Ct. at 1966. A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides
> sufficient notice, a defendant can move for a more definite statement
> under Rule 12(e) before responding. Moreover, claims lacking merit may
> be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

In reviewing a motion to dismiss based on qualified immunity, the Court must accept "the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting [ ] review to the four corners of the complaint." St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted),

*quoted in* <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010). The Supreme

Court has established a two step analysis for resolving qualified immunity issues.

<u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

First, a court should decide whether the facts that a plaintiff has alleged 'show the

[defendant's] conduct violated a constitutional right.' " <u>Saucier</u>, 533 U.S. at 201, *quoted*

*in* <u>Randall v. Scott</u>, 610 F.3d 701, 715 (11th Cir. 2010). "Second, the court must decide

'whether the right was clearly established.' " *Id.;* <u>Scott</u>, 610 F.3d at 715. While <u>Saucier</u>

mandated that sequence, the Supreme Court concluded in <u>Pearson v. Callahan</u>, 129

S.Ct. 808, 818 (2009) that the process "should no longer be regarded as mandatory."

Judges "should be permitted to exercise their sound discretion in deciding which of the

two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand." <u>Pearson</u>, 129 S.Ct. at 818.

**Analysis**

Defendants contend that Plaintiff's complaint should be dismissed because there

is no connection between Plaintiff's injury, which he alleges was the result of Defendant

Williams' actions and instructions, and not caused by the other five Defendants. Doc.

31 at 8-9. Defendants assert that the complaint fails to allege that Plaintiff was injured

by "any failure to act (omission) by Defendants Landrum, Speights, Horton, Curvin or

Richardson." Doc. 31 at 9.

The complaint contains no factual allegations which assert any action or

omission by Defendants Landrum or Richardson. Thus, the motion to dismiss should

be granted as to those two Defendants because the complaint fails to state a claim

against Defendants Landrum or Richardson.

As for Defendants Curvin and Horton, Plaintiff alleged that they were deliberately indifferent to Plaintiff's serious medical needs because Defendant Curvin provided "no treatment at all" for Plaintiff's burn injuries and "serious pain." Doc. 1 at 5. Plaintiff also alleged that when he returned to sick call because of his injuries, Defendant Horton "only issued" Plaintiff a medical pass and scheduled Plaintiff to see the doctor. *Id.* at 5-6. Construed in the light most favorable to Plaintiff, those allegations plausibly assert an Eighth Amendment claim and permit a reasonable inference that although Plaintiff was given a medical pass and scheduled to be seen for a subsequent examination by the doctor, Plaintiff was not given medical treatment for his second degree burns and associated pain by Defendants Curvin or Horton.

Defendants contend in the motion to dismiss that "Plaintiff admits that even after seeing a doctor '. . . he was only issued a medical pass from October 21, 2010 to October 28, 2010.'" doc. 31 at 13. Defendants state that "[w]hile Plaintiff may have considered his injury 'serious' the attending physician did not." *Id.* It is not clear, however, from Plaintiff's statement of facts in the complaint that Plaintiff was examined by a doctor or that the doctor issued Plaintiff the first medical pass. Plaintiff's allegation stated:

> On October 21, 2010 Plaintiff (Dennis L. Roberts) went to sick-call again, and Defendant (S. Horton ARNP) schedule Plaintiff (Dennis L. Roberts) to see the doctor, and was only issued a medical pass from October 21, 2010 to October 28, 2010; for no use of right hand."

doc. 1 at 5-6. Defendants' reading of that allegation is that Plaintiff was seen by a doctor, who is unnamed, and that doctor issued Plaintiff a medical pass. Another reading of that allegation, however, is that Plaintiff went to sick call and saw Defendant

Horton who scheduled Plaintiff to see the doctor and, at the same time, issued Plaintiff a medical pass. Because the precise facts are unknown, the allegation is somewhat vague, and the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff, Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994–95 (11th Cir. 1983), the motion to dismiss on this ground should be denied.

Defendants also contend this case is merely a dispute over the adequacy of Plaintiff's treatment. Doc. 31 at 14. Although a simple difference in medical opinion between a prison's medical staff and an inmate as to a diagnosis or course of treatment will not support a claim of cruel and unusual punishment, *see* Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991), citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989), the distinction here is that in Estelle, the prisoner received treatment for his back injury, but complained that more should have been done in the way of diagnosis, such as an X-ray or other tests. In this case, Plaintiff alleged that he was provided "no treatment at all" by the nurses who were on duty when he reported to sick call. Defendants assert that although Plaintiff alleged he was given no treatment at all for his blistered fingers, he "was nevertheless seen by a medical professional." Doc. 31 at 14, *citing* doc. 1 at 5. Defendants argue that "the issue is not whether Plaintiff was denied the 'minimally adequate medical care' required by the constitution" but rather, Plaintiff only complains about the sufficiency of his treatment. *Id.*

It is true that a disagreement about the sufficiency or adequacy of an inmate's medical care does not rise to the level of deliberate indifference and is insufficient to

state a claim.  However, a claim that an inmate received medical care that was "so cursory as to amount to no treatment at all" does state an Eighth Amendment claim. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (quoting Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989)), *quoted in* Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).  "A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011), *citing* Harris v. Coweta Cnty., 21 F.3d 388, 393 (11th Cir.1994). Accepting Plaintiff's allegations as true, which the Court must do on a motion to dismiss, it cannot be said that Plaintiff's complaint fails to state a claim.  It may be the case that Plaintiff's alleged second degree burn does not rise to the level of a serious medical need,[4] but that determination cannot be made with certainty at this stage of litigation, on the facts as alleged in this complaint.  *But see* Walsberg v. Florida Dep't of Corr., No. 5:11cv6-RS/GRJ, 2011 WL 2420244, at * 4 (N.D. Fla. May 10, 2011) (stating that "where scarring from a burn forms the basis of an inmate's claim for deliberate indifference most courts that have addressed the issue have concluded that a burn does not constitute a serious medical need."), *citing* Rios v. Santa Clara Cnty. Dep't Of Corr., No. C02–1815MMC (PR), 2002 WL 1285045, at *1–2 (N.D.Cal. June 5, 2002)

---

[4] "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003), *quoting* Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)), *quoted in* Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004).  A medical need may be deemed serious "if left unattended" it would pose "a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994), *quoted in* Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), *cited in* Bingham v. Thomas, 654 F.3d 1171, 1175-76 (11th Cir. 2011).

(second-degree burn from gravy spilled on prisoner's hand was not a serious medical need); <u>Wade v. Colaner</u>, No. 06–cv–3715 (FLW), 2009 WL 776985, at *10–12 (D.N.J. Mar. 20, 2009) (pepper spray chemical burns that eventually caused scarring on plaintiff's neck were not a serious medical need).  Basic and conventional medical wisdom advises that if a second-degree burn is small, it is deemed to be a minor injury and not serious.  However, where a second-degree burn is three inches or larger, or is located on the hands, feet, face, or on a major joint, it must be treated as a major or serious burn and medical assistance is needed immediately.[5]  At this stage in the litigation, it must be accepted that Plaintiff has alleged a serious medical need considering he claimed he suffered second-degree burns on his hands.  Doc. 1 at 5.  The motion to dismiss should be denied as to the claims against Horton and Curvin.

Defendant Speights contends that the complaint should be dismissed as to him because the only basis for liability is under a theory of *respondeat superior*.  Doc. 31 at 10-11.  Defendant Speights only alleged involvement was in responding to a grievance submitted by Plaintiff.  Plaintiff claimed that Defendant Speights responded to Plaintiff's formal grievance and concluded that the response provided to Plaintiff in the informal grievance "adequately addressed the issues and/or concerns" Plaintiff raised therein.  Doc. 1 at 5.

Prison officials cannot be named as defendants in a civil rights case merely because the official has supervisory authority over others and the doctrine of *respondeat superior* has been rejected as a basis for recovery under § l983.  <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1129 (11th Cir. 1992), *citing* <u>Monell v. Dep't of Soc. Servs.</u>, 436

---

[5] www.mayoclinic.com/health/first-aid-burns

U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Here, it is clear that Plaintiff has not named Defendant Speights as a Defendant because he was personally involved or participated in the event at issue or because he created a policy or procedure that deprived Plaintiff of a constitutional right. Rather, Plaintiff named Defendant Speights in his supervisory capacity only because, as alleged by Plaintiff, "he did nothing to correct the matter." Because the law is clear that there must be some causal connection between each defendant named and the injury allegedly sustained, and that connection must be more than the fact that a named Defendant has a supervisory role over another, *see* Wilson v. Attaway, 757 F.2d 1227, 1241 (11th Cir. 1985); Henzel v. Gerstein, 608 F.2d 654, 658 (5th Cir. 1979), *citing* Sims v. Adams, 537 F.2d 829, 831-32 (5th Cir. 1976), the claim against Defendant Speights must be dismissed.

To the degree Defendants are sued in their official capacities, they invoke their Eleventh Amendment immunity. Doc. 31 at 11-12. The Eleventh Amendment bars suits against the State and its employees in their official capacity for money damages unless waived by the State or Congress. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-103 (1984). The State of Florida has not waived its immunity, nor has Congress waived the immunity of the states through §1983. Gamble v. Florida Dep't of Health & Rehab. Srvcs., 779 F.2d 1509, 1513 (11th Cir. 1986). While Congress could abrogate the immunity of the states, it must express itself without equivocation, and it has not done so in the context of civil rights actions. Pennhurst, 465 U.S. at 99. Therefore, Plaintiff cannot sue Defendants in their official capacities for civil damages and the motion to dismiss must be granted on this basis.

Defendants also raise qualified immunity as a defense in this case. Doc. 31 at 12-13. The motion to dismiss based on qualified immunity must be denied because it was well established at the time of the events at issue that when an inmate receives medical care that is "so cursory" so as to "amount to no treatment at all," his Eighth Amendment rights may be violated. McElligott, 182 F.3d at 1255; Mandel, 888 F.2d at 789; Brown, 387 F.3d at 1351; Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985). At this stage of litigation, accepting Plaintiff's allegations as true, the qualified immunity defense must be denied.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, doc. 31, be **GRANTED in part and DENIED in part.** Plaintiff's complaint, doc. 1, should be **DISMISSED** as to the claims against Defendants Landrum, Richardson, and Speights, and Plaintiff's claims against Defendants Horton and Curvin should proceed in their individual capacity only. It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings, and Defendants Curvin and Horton be **ORDERED** to submit an answer to the complaint.

**IN CHAMBERS** at Tallahassee, Florida, on March 14, 2013.


S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**