**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**DENNIS LAMAR ROBERTS,**

      **Plaintiff,**

**vs.**                                          **Case No. 4:12cv129-RS/CAS**

**S. HORTON, J.D. WILLIAMS,
and S. CURVIN,**

      **Defendants.**

_____/


## SECOND REPORT AND RECOMMENDATION[1]

After a period of discovery, *see* doc. 34, the three remaining Defendants filed an

Answer, doc. 48, and a motion for summary judgment. Doc. 49. Plaintiff was advised

of his burden in opposing summary judgment, doc. 50, but did not file a response by the

July 5, 2013, deadline, nor has he filed a response since. As explained more fully

below, the unopposed motion for summary judgment should be granted in part and

denied in part.

**Allegations of Plaintiff's Complaint, doc. 1**

Plaintiff alleged that on October 18, 2010, he was assigned to work in food

services at Jefferson Correctional Institution "in the Pot Room." Doc. 1 at 5. Plaintiff

---

[1] Previously, Defendants' motion to dismiss, doc. 31, was granted in part and denied in part. Docs. 42, 46. Plaintiff's claims against Defendants Horton and Curvin proceed in their individual capacity only, and the claims against Defendants Landrum, Richardson, and Speights were dismissed. Doc. 46.

complained that the water was too "hot to stick his hands in the water and asked" Defendant Williams for rubber gloves. *Id.* Defendant Williams told Plaintiff "he did not have any safety gloves to give him, and that he better get those pots clean, or he would go to lock-up for refusing to work." *Id.* Plaintiff alleged that when the Defendant forced him "to stick his hands in hot water above 250 degrees with chemicals that caused Plaintiff to suffer second degree burns for the lack of safety." *Id.*

Plaintiff went to sick call on October 20, 2010, because of blisters that formed on his fingers. Doc. 1 at 5. Plaintiff alleged that Defendant Curvin, a Licensed Practice Nurse, provided no treatment for him. *Id.* The next day, Plaintiff returned to sick call and claimed that Defendant Horton, an Advanced Registered Nurse Practitioner, scheduled him to be examined by the doctor and "only" gave him a medical pass to not use his right hand for a week, suggesting that no other treatment was provided. *Id.* at 5-6.[2] Although Plaintiff had a pass, he claimed that Defendant Williams paged him "to report to work, and forced" him to work again on October 22, 2010, even though Plaintiff's hand was wrapped.[3] *Id.* at 6. Furthermore, Plaintiff alleged that Defendant Williams repeatedly denied Plaintiff's requests for rubber gloves and caused permanent injury to Plaintiff's right hand.[4] *Id.*

---

[2] Defendant Horton re-issued Plaintiff a medical pass, extending the restricted activity and no use of right hand for five more days. Doc. 1 at 6, ¶ 8.

[3] Captain Pate, not a defendant in this case, directed Plaintiff to return to his dorm because he did not want him working "in the kitchen which his hand injured like that." Doc. 1 at 6.

[4] Plaintiff has not supported that claim and demonstrated permanent injury.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

**Undisputed Rule 56 Evidence**

Defendants' statement of material facts is supported by the record evidence and, pursuant to N.D. Fla. Loc. R. 45.1(A), is deemed to be admitted by Plaintiff because Plaintiff did not file a response.

On October 20, 2010, Plaintiff went to sick call at the medical department of Jefferson C.I., complaining that he burned his right hand while working in the kitchen washing dishes in hot water two days earlier, on October 18th.  Doc. 49 at 8; Ex. 3, ¶5 (doc. 49 at 40-42); Ex. 3-1 (doc. 49 at 44).  Plaintiff said his pain was a 2 on a scale of 1 to 10.  *Id.*  Defendant Curvin noted Plaintiff had blisters on his right hand and diagnosed Plaintiff as having second degree burns on his third, fourth, and fifth digits.  Doc. 49, Ex. 3-1 (doc. 49 at 45).  The area was cleansed, and Defendant Curvin applied Bacitracin ointment, an antibiotic, and a dressing, gave Plaintiff a "pass for lay in today," and told him to return that night at 6:00 p.m. for a dressing change.  *Id.*  Defendant Curvin also directed Plaintiff to keep his hand "clean and dry" and not to "burst blister."  Plaintiff was also scheduled an appointment to see the clinician.  *Id.*

Plaintiff was re-evaluated the following day, on October 21st, by Defendant Horton.  Blisters were noted on the anterior surface of the third, fourth, and fifth digits.  Doc. 49 at 8; Ex. 3, ¶6 (doc. 49 at 40-42); Ex. D (doc. 49 at 31); *see also* Ex. 3-1 (doc. 49 at 47).  No bleeding or drainage was noted.  Ex. D (doc. 49 at 31).  Defendant Hortin assessed Plaintiff has having second degree burns.  *Id.*  Plaintiff's dressing was changed, the area was cleaned and antibiotic cream applied, and Plaintiff was scheduled for daily dressing changes for one week.  *Id.*  Plaintiff was advised he could

use over the counter Tylenol for pain. *Id.* Plaintiff was also provided a pass for "no use of right hand" for seven days. *Id.*

On October 27, 2010, Defendant Horton removed the old dressing, cleaned the hand with an antibacterial soup, applied a new dry dressing, and issued Plaintiff another pass for no use of his right hand for an additional five days. Doc. 49 at 8-9; Ex. 3, ¶7 (doc. 49 at 40-42). At a health assessment on November 3, 2010, Plaintiff reported no medical complaints. Doc. 49, Ex. 3-1 (doc. 49 at 51). Plaintiff's last visit concerning the burns was on November 15, 2010. Doc. 49 at 8-9; Ex. 3, ¶8 (doc. 49 at 40-42); Ex. 3-1 (doc. 49 at 53). No blisters were noted on his fingers, there were no open areas, and no bleeding. *Id.* Plaintiff was discharged and advised to go to sick call if needed. Doc. 49, Ex. 3 at 41 (Harris affidavit). Plaintiff made no further visits to medical concerning the burns to his fingers or hand between November 15, 2010, and July 31, 2012. *Id.*

Plaintiff testified in his deposition that by October 21st, when he returned to sick call, his hand had already been wrapped up by Defendant Curvin. Doc. 49 at 3-4; Ex. 1, 52:10-54:03. Plaintiff's admission in the deposition reveals that Defendant Curvin did provide Plaintiff with treatment.

In explaining the basis for his claim against Defendant Horton (who Plaintiff alleged issued him a pass), Plaintiff contends that she should have given him a "no work" pass and not just a "no use of right hand" pass. Doc. 49 at 4; Ex. 1. Plaintiff claims that he could be made to work with one hand and believes Defendant Horton "should have gave me a No-work pass instead of a No use of right hand." Doc. 49 at 4-5; Ex. 1, 60:2-63:4. Plaintiff also admitted in his deposition that when he saw Defendant

Horton on October 21st, she "cleaned the area and put a cream on it and a dry dressing on it." *Id.*

In explaining how he burned his hand, Plaintiff testified in his deposition that "by me scrubbing the pans for a period of time and had my hand in the water a period of time, that's when I discovered it - it was burned." Doc. 49 at 6; Ex. 1, 25:5-26:16. Plaintiff said that when he washes the pans, he puts his entire right hand in the water, "past the wrist." *Id.* Plaintiff did not have burns on his first finger or thumb, only the middle finger, ring finger, and pinkie. Doc. 49, at 6-7; Ex. 1, 37:24-38:12.

Jefferson Correctional Institution keeps a Master Menu Production Log of relevant temperatures for each of the three meals served daily. Doc. 49 at 7; Ex. 2. The log reports that on October 18, 2010, the temperature of the tap water in the pot room was 140 degrees during the lunch and supper meals, and up to 150 degrees for breakfast. *Id.*; *see also* Ex. 3-3 (doc. 49 at 82-84).

As additional evidence Defendants presented an affidavit of Dr. Harris. Doc. 49, Ex. 3 (doc. 49 at 40-42). Dr. Harris contends that Plaintiff's assertion that he burned his hand in hot water is not consistent with his injuries as Plaintiff's "entire hand would have been red, and blisters might have appeared in any location on both sides of the hand." Doc. 49 at 8-9; Ex. 3, ¶10 (doc. 49 at 40-42). Dr. Harris stated his opinion concerning how Plaintiff might have injured his hand:

> The manner in which [Plaintiff] claims the injury occurred does not adequately explain superficial second degree burns (i.e., blisters) to the anterior (palmar) surfaces of the third, fourth, and fifth fingers. A more likely scenario is that [Plaintiff] picked up a hot pan by the handle with his left hand and placed the third, fourth, and fifth fingers under the right side of the pank causing the localized burns. Alternatively, he might have opened an oven and attempted to pull out a hot tray with the right three fingers, causing the burns.

Doc. 49 at 8-9; Ex. 3, ¶10 (doc. 49 at 40-42). Dr. Harris also opines that Plaintiff's "pain was not significant as evidenced by the fact that [Plaintiff] was able to wait two days from the injury" to go to sick call for medical treatment. *Id.* Furthermore, Dr. Harris states that water with a temperature of 140 degrees "can cause third degree (full thickness) burns to the skin in as little as five seconds." Doc. 49 at 8-9; Ex. 3, ¶11 (doc. 49 at 40-42).

During Plaintiff's deposition, he was asked whether he believed his hand was burned by the temperature of the water or by use of chemicals.[5] Doc. 49, Ex. 3-2 (doc. 49 at 77). Plaintiff responded, "I believe it was the temperature of the water." *Id.* Plaintiff also said he did not burn his hand "in just one quick instant." *Id.* at 73. The following is illustrative:

Q. Okay. Why didn't you add some cold water to the – to bring down the temperature of the hot water?

A. We're not ordered to do that. He tell us to – when you're doing chicken pans, you have to leave the hot water just like it is. He don't want no cold water in it. Mr. Williams don't want no cold water in it, he want it all hot water in it. He – we ordered – we ordered to do that.

Q On this particular night, did anybody give you that kind of order?

A. Mr. Williams.

Q. Mr. Williams, okay. So when you first put your hand in the water after filling the sink, did it burn your hand?

A. Not just – not – it didn't bun it just like that. By me – by me – by me washing all the pans continuously, sticking my hand in the water what – what burned it. By – by me, you know, by a period of time.

---

[5] Plaintiff was asked if he added any chemicals to the water used to wash pots, and he replied: "The soap they give us to wash pots." Doc. 49 at 71. Plaintiff said staff measure out the amount of soap to use "and give it to you." *Id.*

Doc. 49, Ex. 3-2 (doc. 49 at 69-70).

Plaintiff testified that he asked for safety gloves before he started washing the pans. *Id.* at 74. Plaintiff said: "There was no [sic] safety gloves in the kitchen. He didn't have any. And I asked several times." *Id.*

**Analysis**

**a. Denial of Medical Care**

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* Hill, 40 F.3d at 1188-89, and Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

The concept of deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). Subjective recklessness, as defined in criminal law, is the standard which must be shown for an official's actions to rise to

the level of deliberate indifference. *Id.* Deliberate indifference has been described as a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm to a prisoner by depriving him of a basic human need. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

Combining the standards from Farmer and Estelle, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Put another way, once a prisoner shows that he has a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

In this case, the undisputed evidence reveals that Plaintiff's medical needs were cared for in a timely and appropriate manner. Plaintiff delayed going for medical treatment for two days after burning his fingers, but upon arrival in sick call, Plaintiff was evaluated and treated. His burns were cleansed, ointment provided, and he was given a pass so that he would not further injure the wound while it healed. That Plaintiff may have wanted a no work pass instead of the pass he received does not show his injury was not given appropriate medical treatment. A "difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of

treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991), citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). As Plaintiff has not come forward with any evidence to show that Defendants Curvin or Horton were deliberately indifference to his medical needs, whether serious or not,[6] summary judgment should be granted in their favor. Plaintiff's claims against Defendants Curvin and Horton appear to be malicious.

**b.     Eighth Amendment Claim against Defendant Williams**

Defendants assert in the summary judgment motion that in a conditions of confinement case, "prison officials violate the Eighth Amendment through 'the unnecessary and wanton infliction of pain.["] Doc. 49 at 14, *citing* Farmer v. Brennan, 114 S.Ct. 1970 (1994). Defendants contend, in addition, that an actionable injury must

---

[6] Because Plaintiff was provided treatment, it is unnecessary to address whether Plaintiff's second degree burns were "serious" medical needs. However, it is noted that another court in this district found injuries similar to Plaintiff's injuries to be not serious. Walsberg v. Florida Dep't of Corr., No. 5:11cv6-RS/GRJ, 2011 WL 2420244, at *4 (N.D. Fla. May 10, 2011) (finding that although the prisoner had "suffered a chemical burn from an oven cleaner" it was not "sufficiently serious to be considered a serious medical need."). Magistrate Judge Jones noted that "where scarring from a burn forms the basis of an inmate's claim for deliberate indifference most courts that have addressed the issue have concluded that a burn does not constitute a serious medical need." Walsberg, 2011 WL 2420244, at *4, *citing* Rios v. Santa Clara Cnty. Dep't of Corr., No. C02–1815MMC (PR), 2002 WL 1285045, at *1–2 (N.D. Cal. June 5, 2002), and Wade v. Colaner, No. 06–cv–3715 (FLW), 2009 WL 776985, at *10–12 (D.N.J. Mar. 20, 2009) (stating that "the normal effects of pepper spray on a person, i.e. burning, are not of the kind to constitute a serious medical need" and, thus, even though the chemical burn caused scarring on plaintiff's neck, it was not deliberate indifference to delay treatment until plaintiff was taken to police headquarters and there was no need to call for an ambulance). In Rios, a prisoner spilled gravy from his meal tray which caused a second-degree burn. Notably, the court did not address the seriousness of the medical need but, instead, concluded only that the delay in receiving treatment by a doctor was not an Eighth Amendment violation because plaintiff had received care from "several nurses who assessed his condition and found that it was not an emergency . . . ." 2002 WL 1285045, at *2.

be more than *de minimis*, *id.*, *citing* <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1111 (11th Cir. 2006) , and assert that blisters are *de minimis*.  Doc. 49 at 14.  Moreover, Defendant Williams[7] asserts "there is no record evidence to demonstrate that Williams caused any actual injury to the Plaintiff."  Doc. 49 at 16.

Defendants presented evidence which shows that the temperature of the tap water was 140 degrees, a temperature that would cause serious third degree burns in just five seconds.  Because a log is taken three times a day for the breakfast, lunch, and dinner meals, it must be presumed that Defendant Williams is aware of the water temperature.[8]  The evidence presented shows that Defendant Williams required the water to be hot, and "ordered" that no cold water be added to reduce the temperature. Safety gloves were not provided, despite Plaintiff asking several times for gloves, and Plaintiff testified that Defendant Williams verbally ordered Plaintiff to wash "the pans or go to lock-up."  There is, accordingly, evidence that Defendant Williams directed Plaintiff to perform a work assignment that would be potentially dangerous and painful and, thus, there is evidence linking Defendant Williams to Plaintiff's injury.

Defendants cite to the incorrect standard for review of Plaintiff's claim against Defendant Williams.  Doc. 49 at 13-14, 16-17.  This is not a generic conditions of confinement case, but a more specific case concerning a prison work assignment which is a subset of conditions of confinement cases.  <u>Lee v. Sikes</u>, 870 F. Supp. 1096, 1099

---

[7] No affidavit or relevant evidence was presented specifically for Defendant Williams.

[8] All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  <u>Watkins v. Ford Motor Co.</u>, 190 F.3d 1213, 1216 (11th Cir. 1999).

(S.D. Ga. 1994),[9] *citing* Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993).  To

establish an Eighth Amendment violation based on prison workplace conditions,

inmates must show deliberate indifference.  Lee, 870 F. Supp. at 1099; *see also* Estelle

v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (deliberate indifference

required for Eighth Amendment claim for inadequate medical care).  In the work

assignment context, prison officials are deliberately indifferent when they "knowingly

compel convicts to perform physical labor which is beyond their strength, or which

constitutes a danger to their lives or health, or which is unduly painful."  Lee, 870 F.

Supp. at 1100, *quoting* Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977).  Thus, in this

case it must be shown that Defendant Williams' "knowingly" compelled Plaintiff to

perform physical labor which was dangerous to his life or health to meet the "deliberate

indifference" standard.  *See also* Smalls v. Berrios, No. 3:06cv96/LAC/MD, 2007 WL

1827464 (N.D. Fla. June 25, 2007) (finding that "plaintiff fail[ed] to establish that

Ferguson was deliberately indifferent to a serious issue of workplace safety."); Buckley

v. Barbour County, Ala., No. 2:07CV1119–WKW, 2010 WL 1993066 (M.D. Ala., May 17,

2010); Pintado v. Dora, No. 09-23697, 2011 WL 794607, at *8 (Jan. 28, 2011), *citing*

Gill v. Mooney, 824 F.2d 192 (2d Cir. 1987) (inmate stated a colorable claim when

officer required inmate to continue working on a defective ladder after inmate informed

---

[9] In Lee, the plaintiff had been assigned to work in the prison's hog farm
operation and brought a § 1983 action against the warden and supervisor of inmates at
the hog barn.  The plaintiff was injured by a boar hog that attacked him.  870 F.Supp. at
1099.  At that time, no Eleventh Circuit case discussed "what constitute[d] deliberate
indifference in the workplace safety context," although an Eighth Circuit case had
addressed the issue.  870 F.Supp. at 1100, *citing* Choate v. Lockhart, 7 F.3d 1370,
1374 (8th Cir. 1993) (citing Wilson v. Seiter, 501 U.S. 294, 305, 111 S.Ct. 2321, 2327,
115 L.Ed.2d 271 (1991)).

the officer that the ladder was unsafe); <u>Ambrose v. Young</u>, 474 F.3d 1070, 1078 (8th Cir. 2007) (concluding that defendant was not entitled to qualified immunity for inmate's death, and finding that instructing inmates to stomp out a fire burning near a downed live power line that was a known, substantial risk constituted deliberate indifference); <u>Sanchez v. Taggart</u>, 144 F.3d 1154, 1156 (8th Cir. 1998) (holding that Taggart violated the Eighth Amendment by ordering inmate to assist in sandbagging duty, although the defendant knew the inmate had documentation prohibiting him from performing physical labor); <u>Hall v. Bennett</u>, 379 F.3d 462, 464–65 (7th Cir. 2004) (genuine issues of material fact existed as to whether supervisors knew that inmate could suffer a severe electrical shock as a consequence of working on a live wire without protective gloves).

In this case, construing the evidence in the light most favorable to Plaintiff, the presence of daily logs showing the water temperature of the tap water at 140 and 150 degrees, coupled with Plaintiff's repeated requests for safety gloves, suggests that Defendant Williams "knowingly" compelled Plaintiff to perform a task that was potentially injurious to Plaintiff. There is also evidence that the water temperature was so hot it could cause third degree burns in as little as five seconds. Third degree burns are the most serious level of burns and may cause permanent tissue damages as well severe pain. Defendants contend that Plaintiff has not shown that Defendant Williams drew the inference that the water posed a substantial risk of serious harm, yet the evidence is sufficient to demonstrate a genuine dispute on this point.[10]  It is concluded that there is a

---

[10] In <u>Alexander v. Barefield</u>, No. 5:06cv22-RS, 2007 WL 1655383 (N.D. Fla. June 7, 2007), this Court found a genuine issue of material fact precluded summary judgment on the plaintiff's deliberate indifference claim. In that case, one inmate was attaching razor wire to the rail of a fence while atop a twelve foot ladder that displayed a manufacturer's warning prohibiting more than one occupant. The defendant

triable issue on this claim and that the evidence construed in the light most favorable to Plaintiff meets the subjective standard.

Defendant's primary challenge to this claim is that Plaintiff's injury is only *de minimus* and, thus, fails the objective standard.  Doc. 49 at 17.  The evidence reveals that Plaintiff suffered second degree burns on three fingers of his right hand, resulting in blisters.   Some cases have held that a minor burn is not enough of an injury to sustain an Eighth Amendment claim.  Walsberg v. Florida Dep't of Corr., No. 5:11cv6-RS/GRJ, 2011 WL 2420244, at *4 (N.D. Fla. May 10, 2011) (finding that although the prisoner had "suffered a chemical burn from an oven cleaner" it was not "sufficiently serious to be considered a serious medical need."); Pressley v. Green, (concluding that "no reasonable jury could find that a few hour delay of medical treatment for a small second-degree burn raises the level of the minor injury to a serious medical condition."). However, other cases have accepted that a second degree burn may be considered more than *de minimus*.  *See* Lane v. Bynum, No. 98-41140, 1999 WL 799906, at *1-2 (5th Cir. Sept. 13, 1999) (remanding Eighth Amendment claim, finding that burns which left blisters may be sufficient injury); Barry v. Felker, No. 2:08cv1722, 2013 WL 4736840, at *5-6 (E.D. Cal. Sept. 3, 2013)(finding second degree burns to inmate's

_____

correctional officer ordered the plaintiff to climb the ladder to help the other inmate.  The plaintiff told him that the ladder was broken, it would not hold two people, and it was unsafe for him to climb it.  *Id.* at *1.  The defendant ignored the plaintiff and ordered him to get up the ladder or get locked up.  *Id.*  The plaintiff climbed the ladder as ordered, it collapsed, and the plaintiff fell nine feet to the ground, injuring his back. *Id.*  The Court noted that "mere knowledge by an official of infirm conditions does not establish deliberate indifference; it must also be demonstrated that, with knowledge of the infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions."  *Id.* at *4, *citing* LaMarca v. Turner, 995 F.2d 1526, 1537 (11th Cir. 1993).  The Court denied the Defendant's summary judgment motion, finding the evidence sufficiently demonstrated an attitude of deliberate indifference." *Id.* at *5.

knees were "not trivial" but that there was no intent to punish or maliciously cause harm). This issue is one that need not be decided because even if Plaintiff suffered a significant injury, Defendant Williams would still be entitled to qualified immunity.

### c.    Qualified Immunity

Defendants raise qualified immunity as a defense to this case. Doc. 49. To survive summary judgment on the basis of qualified-immunity, Plaintiff must present evidence that (1) the defendants violated his constitutional rights; and (2) those rights were "clearly established" when the violation occurred. Hope v. Pelzer, 536 U.S. 730, 736–41(2002); Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010) (per curiam), citing Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 815–816, 172 L.Ed.2d 565 (2009). "The purpose of the qualified immunity defense is to 'protect[ ] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Youmans, 626 F.3d at 562. Thus, officers must be "on notice that their conduct is unlawful." Id., citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001). "A judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Youmans, 626 F.3d at 563, citing Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998), quoting Jenkins v.

<u>Talladega City Bd. of Educ.</u>, 115 F.3d 821, 826 n.4. (11th Cir. 1997). Plaintiff has not responded to the summary judgment motion, and the Court has not located a case from the Eleventh Circuit Court of Appeals, the Florida Supreme Court, or the United States Supreme Court which would have given notice to Defendant Williams that an inmate who is required to put his hands in 140 degree water to wash pans must also be provided safety gloves.[11] Therefore, Defendant Williams is entitled to qualified immunity and the summary judgment motion should be granted.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 49, be **GRANTED** as Plaintiff did not demonstrate an Eighth Amendment claim against Defendants Curvin or Horton, and because Defendant Williams is protected by qualified immunity.

**IN CHAMBERS** at Tallahassee, Florida, on November 4, 2013.


 S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

---

[11] Furthermore, "courts have recognized that the mere failure to provide proper instructions or safety devices for use on prison work details does not constitute deliberate indifference." <u>Alexander v. Barefield</u>, No. 5:06cv22-RS, 2007 WL 1655383, at *5 (N.D. Fla. June 7, 2007) (denying summary judgment but noting that "[t]he parties have not cited, and the undersigned has been unable to locate, any published Eleventh Circuit cases applying the Eighth Amendment's deliberate indifference standard in the workplace safety context.").

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.